**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IRMA MENDEZ,<br><br>     Plaintiff,<br><br>vs.<br><br>FIESTA DEL NORTE HOME OWNERS ASSOCIATION et al.,<br><br>     Defendants. | 2:15-cv-00314-RCJ-NJK<br><br>**ORDER** |

This case arises out of a homeowners' association foreclosure sale. Pending before the Court are three motions to dismiss and two motions for partial summary judgment.

I.   **FACTS AND PROCEDURAL HISTORY**

In 2005, Plaintiff Irma Mendez purchased a piece of real property (the "Property") for $315,000, giving the lender a promissory note for $252,792 and a deed of trust against the Property securing the note. (*See* Compl. ¶¶6, 18–19, ECF No. 1). Defendant Alessi & Koenig (A&K), on behalf of Defendant Fiesta Del Notre HOA (the "HOA"), caused to be recorded a notice of delinquent assessment lien on March 13, 2013, caused to be recorded a notice of default and election to sell under homeowners association lien on July 5, 2013, and caused to be recorded a trustee's deed upon sale on March 3, 2014 after a trustee's sale to Absolute Business Solutions, Inc. ("ABS"). (*See id.* ¶¶ 26–30).

Plaintiff sued A&K, the HOA, Complete Association Management Co., LLC ("CAMCO"), ABS, and Amir Hujjuttallah in this Court *in pro se* on eight causes of action: (1) wrongful foreclosure; (2) violations of constitutional rights; (3) Nevada Unfair Trade Practices Act ("NUTPA"); (4) Fair Debt Collection Practices Act ("FDCPA"); (5) Fraud; (6) Unjust Enrichment; (7) Racketeering; and (8) Breach of Contract and Fiduciary Duties. CMC moved to dismiss for failure to state a claim, and the HOA and A&K joined the motion. ABS and Hujjuttallah separately moved to dismiss under *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), and the HOA joined the motion. The Court denied the second motion but granted the first motion in part, with leave to amend in part. Specifically, the Court dismissed the claims for unjust enrichment, racketeering, breach of fiduciary duty, and the claims under Nevada Revised Statutes sections ("NRS") 598.0915(1) and (15), 42 U.S.C. § 1983, and 15 U.S.C. §§ 1692f(6), 1692g(c), 1692i(b), and 1692k, without leave to amend. The Court dismissed the claim for fraud and the claims under 15 U.S.C. §§ 1692d, 1692e, and 1692j(a), with leave to amend. The Court refused to dismiss the claims for wrongful foreclosure and breach of contract and the claims under NRS 598A.060(1)(12) and 15 U.S.C. § 1692f(1).

Plaintiff filed the First Amended Complaint ("FAC"), listing five causes of action: (1) wrongful foreclosure; (2) NUTPA; (3) FDCPA; (4) Fraud; and (5) Breach of Contract. CAMCO filed two identical (or nearly identical) motions to dismiss the FAC, and the HOA joined the first motion. A&K filed a separate motion to dismiss, which the HOA joined. The Court denied the motions as against the wrongful foreclosure claim, based on Plaintiff's allegations that Defendants wrongfully rejected her attempt to redeem the default before the foreclosure sale. The Court denied the motions as against the claim of bid rigging under NRS 598A.060(1)(12), based on Plaintiff's allegation that the foreclosure sale occurred in the private offices of the

auctioneer for approximately 10% of the Property's fair market value.  Plaintiff also alleged violations of 15 U.S.C. §§ 1692d, 1692f, and 1692g.  The Court dismissed the claims under §§ 1692d and 1692g and dismissed the § 1692f claim as against CAMCO but not as against the HOA or A&K.  The Court dismissed the fraud claim.  Finally, the Court permitted the breach of contract claim to proceed as against the HOA, based on Plaintiff's allegations that the HOA failed to obtain the consent of 2/3 of homeowners in the HOA before pursuing foreclosure as required by the CC&R.

The Court granted a motion to amend the FAC in part, and Plaintiff filed the Second Amended Complaint ("SAC"), listing four causes of action: (1) wrongful foreclosure (the HOA, CAMCO, A&K, Absolute Collection Services, LLC ("ACS")); (2) NUTPA bid rigging (A&K, Williams, ABS, Hujjutallah); (3) FDCPA § 1692f (the HOA and A&K); and (4) Breach of Contract (the HOA).  Plaintiff has moved for offensive summary judgment on the FDCPA claim, and the HOA has countermoved for defensive summary judgment against that claim.  Three groups of Defendants have separately moved to dismiss.

## II. LEGAL STANDARDS

### A. Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

     A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.     Summary Judgment**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would

bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even if the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III.    ANALYSIS**

    **A.    The Motions to Dismiss**

        **1.    Motion No. 138**

Kendrall Williams has moved to dismiss for failure to state a claim. Plaintiff accuses Williams of bid rigging under NRS 598A.060(1)(12). The Court previously denied A&K's motion to dismiss the bid rigging claim, finding that an allegation of the sale of the Property for approximately 10% of its fair market value conducted in the private offices of the auctioneer, (*see* Notice of Trustee's Sale, ECF No. 43, at 73), was sufficient to make a bid rigging claim plausible. But Williams is not alleged to have had any ties to the sale itself. He is not alleged to have had any connection to the auctioneer (A&K), the purchaser (ABS), or the principal of the purchaser (Hujjatullah). The allegation that "A&K, WILLIAMS, ABS, and HUJJUTALLAH, collaborated together to commit acts of bid rigging," (Second Am. Compl. ¶ 44, ECF No. 117), is conclusory, and such an inference cannot be plausibly drawn from the surrounding non-

conclusory allegations that Williams was the owner/operator of CAMCO, the owner of ACS, and that after the sale he wrote a check to A&K for $517 in his capacity as the owner/operator of CAMCO as some sort of refund for A&K's services. (*See id.* ¶¶ 11, 23, 45). The Court grants Williams's motion to dismiss.

### 2. Motion No. 140

Jimijack Irrevocable Trust ("JimiJack"), Joel A. Stokes, and Sandra F. Stokes have moved to dismiss, arguing that there are no allegations in the SAC sufficient to state any claim against any of them. The Court agrees. JimiJack is merely alleged to currently hold title to the Property, and the Stokeses are alleged to either be the trustees or beneficiaries of JimiJack.

Plaintiff responds that she did not mean to join these parties as Defendants but as "Indispensable Parties." But if joined as indispensable, they would of course be Defendants, as they are alleged to hold title to the Property at issue. Plaintiff has not simply filed a motion to join them as indispensable parties or dismiss under Rule 19, however, but has actually listed them as Defendants under the SAC and thereby joined them directly. But there is no basis for the joinder of these parties, whether as Defendants or otherwise. There is no quiet title claim, and these parties are not alleged to have had anything to do with the foreclosure or alleged bad acts of the other Defendants. The Court therefore grants the motion to dismiss and dismisses these parties from the action.

### 3. Motion No. 146

ACS has moved to dismiss the wrongful foreclosure claim for failure to state a claim, noting that the only allegation in the SAC against ACS is that it recorded a Notice of Delinquent Assessment Lien against the Property on October 28, 2010. (*See id.* ¶ 23). The Court previously refused to dismiss the wrongful foreclosure claim as against CAMCO and A&K because

Plaintiff had sufficiently alleged that CAMCO wrongfully rejected Plaintiff's tender of delinquent assessments and that A&K was CAMCO's agent as to foreclosure issues. But ACS is not implicated in those alleged bad acts.

### B.     The Cross-Motions for Summary Judgment on the FDCPA Claim

Plaintiff has moved for partial offensive summary judgment as to her claim against A&K and the HOA under § 1692f(1), and the HOA has countermoved for defensive summary judgment against that claim. Subsection 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). In the SAC, Plaintiff alleges that the Notice of Default indicated she owed $1,378.81, but the monthly assessments were only $25 per month, such that the most due should have been $150. (*See* Second Am. Compl. ¶¶ 53, 55). She alleges that the additional fees and collection costs were added as an "unfair or unconscionable means" under § 1692f to discourage or make impossible such a payment before foreclosure. (*See id.* ¶¶ 52, 54). The Court previously ruled that the HOA and A&K had been sufficiently alleged to have attempted to collect amounts not authorized by law or contract as specifically prohibited under § 1692f(1) and to have also violated the generally applicable rule against unfair or unconscionable debt collection under § 1692f.

In support of her motion, Plaintiff adduces a copy of a Notice of Delinquent Assessment Lien ("NDAL") recorded by A&K on behalf of the HOA indicating a total amount due of $830.10 as of March 11, 2013, $717.50 of which "represent Collection and/or Attorney fees, assessments, interest, late fees and service charges" and $112.60 of which "represent collection costs." (NDAL, ECF No. 115-1, at 2). She also adduces the Notice of Default and Election to

Sell ("NOD"), indicating a total of $1, 944.85 due as of June 3, 2013, with no itemization. (NOD, ECF No. 115-1, at 4). She also adduces an October 30, 2013 letter sent to her from A&K on behalf of the HOA indicating no payment as of that date, explaining that $2,185.27 was then due, with no itemization. (*See* First A&K Letter, ECF No. 115-1, at 7). She also adduces a Notice of Trustee's Sale ("NOS") indicating a total of $3,529.97 due as of December 8, 2013, with no itemization. (*See* NOS, ECF No. 115-2, at 2). She also adduces a February 24, 2014 letter sent to her from A&K on behalf of the HOA indicating that the HOA had authorized a trustee's sale, indicating "Approximate Amount owed HOA (delinquent assessment): $973.81," and indicating that A&K's fees were between $2,500 and $2,950. (Second A&K Letter, ECF No. 115-2, at 4). Plaintiff also adduces a transaction detail for the Property from December 2011 to April 2013, indicating monthly assessments of $25 through December 2012, rising to $27.50 in January 2013. (*See* Transaction Detail, ECF No. 115-3, at 2). The document shows various late fees and various payments made through CMC, with the account having become delinquent on January 1, 2013, and the delinquent assessments and late fees having risen to $317.37 by April 1, 2013, $135 of which represented delinquent assessments. She also adduces a copy of an April 1, 2013 letter sent to her from A&K on behalf of the HOA, indicating $317.37 in "Assessments Through April 15, 2013," no late fees, but various attorney's fees and collection costs for a total of $859.97. (*See* Third A&K Letter, ECF No. 115-3, at 7). Plaintiff also adduces page 24 of the CC&R, indicating that "reasonable costs of collection (including attorney's fees) and late charges" and interest may be collected upon a delinquent assessment. (*See* CC&R § 4.7, ECF No. 115-4, at 22). Other evidence is adduced, but it is not relevant to the present claim.

The Court denies offensive summary judgment to Plaintiff. The evidence adduced would not entitle Plaintiff to a directed verdict under the § 1692f(1) claim at trial, because the CC&R

adduced by Plaintiff herself appear to permit a lien to include certain collection costs, and Plaintiff has therefore not satisfied her initial burden. Although some of the evidence tends to show that certain late fees were mischaracterized as delinquent "assessments" in the Third A&K Letter, the evidence tends to show that the CC&R expressly permitted the complained-of collection costs, and the total amount sought to be collected was permitted. Nor does the evidence tend to show any unfair or unconscionable method of debt collection.

Plaintiff also argues that A&K and the HOA attempted to collect more than was due because the HOA remitted a partial refund to A&K of $571 on April 2, 2014. (*See* Check, ECF No. 115-4, at 20 ("EXCESS PROCEEDS SALE CASA ALTO")). The Trustee's Deed Upon Sale indicated a total lien of $4,954.97, which is consistent with an invoice sent to the HOA by A&K. (*See* Trustee's Deed Upon Sale, ECF No. 115-2, at 13; Invoice, ECF No. 115-3, at 4). That invoice noted that $1,378.81 was due to the HOA from the sale proceeds, (*see* Invoice), and A&K sent the HOA a check for that amount on February 28, 2014, two days after the sale, (*see* Check, ECF No. 115-4, at 20). This evidence does not prove the § 1692f(1) claim, because it does not show that A&K or the HOA attempted to collect more than was owed against the Property by contract or law. There is at least a genuine issue of material fact as to this issue.

Plaintiff also argues that she was charged $300 for a management fee, (*see* A&K Letter to the HOA, ECF No. 115-3, at 4 (indicating a $300 "Management Account Setup Fee")), but that fee should only have been $200, (*See* CAMCO–HOA Management Contract 2 (indicating that an "Account Setup Fee" was to be $200)). None of this evidence, however, indicates that Plaintiff was charged $300 for any "account setup fee." Moreover, there is no evidence adduced indicating why A&K should have been bound by the contract between CAMCO and the HOA.

The HOA has countermoved for summary judgment against the § 1692f(1) claim. It first argues that it is not a "debt collector" under the FDCPA:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The Court agrees and therefore grants summary judgment to the HOA against the § 1692f(1) claim for this reason. Without addressing whether A&K qualifies as a "debt collector" under the FDCPA, the HOA itself is clearly not a "business the principal purpose of which is the collection of any debts," nor is the HOA alleged to regularly collect debts owed to another. Debt collection is incidental to the HOA's principal purpose, and it only ever attempts to collect its own debts. The Court needn't address the HOA's other arguments. Plaintiff correctly notes in response that the Court previously denied a motion to dismiss the FDCPA claim as against the HOA and A&K because Plaintiff had sufficiently alleged that they had attempted to collect amounts not authorized by law, but the predicate question of whether the HOA itself was a "debt collector" under the FDCPA was not addressed, and the clear answer is "no." Finally, a party cannot be vicariously liable for its agent's violations of the FDCPA unless they are *both* "debt collectors" under the FDCPA, so the HOA here cannot be liable for A&K's actions as a debt collector. *See Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999).

### C. Amendment

At the hearing on the present motions, the Court indicated it intended to give Plaintiff leave to amend to plead a quiet title claim against JimiJack and the Stokeses. However, it has now become clear that Plaintiff has already filed a separate action pending before Judge Gordon listing precisely such a claim. (*See* Compl. 6–7, ECF No. 1 in Case No. 2:16-cv-1077). And

even before she filed the action pending before Judge Gordon, Plaintiff had been joined as a defendant in a quiet title action by ABS pending before Judge Mahan. (*See* Compl. 4–5, ECF No. 3-2 in Case No. 2:15-cv-1325).  The Court will consult with those judges as to transfer and/or consolidation of the cases in the near future.  In any case, the Court will not permit Plaintiff to amend to create a third quiet title action as to the Property.  Moreover, Plaintiff should have informed the Court of the other quiet title actions at the hearing.  The Court appreciates that Plaintiff is proceeding *in pro se*, but she has the same duty of candor to the Court as attorneys do.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 138, 140, 146) are GRANTED.  Kendrall Williams, JimiJack Irrevocable Trust, Joel A. Stokes, Sandra F. Stokes, and Absolute Collection Services, LLC are DISMISSED from this action.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 115) is DENIED.

IT IS FURTHER ORDERED that the Countermotion for Summary Judgment (ECF No. 130) is GRANTED.

IT IS SO ORDERED.

Dated this 7th day of July, 2016.

_____
ROBERT C. JONES
United States District Judge